UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

GREGORY LYNN JOHNSON #290302     CIVIL ACTION NO. 20-cv-1193

VERSUS     JUDGE ELIZABETH E. FOOTE

DARREL VANNOY     MAGISTRATE JUDGE HORNSBY

## REPORT AND RECOMMENDATION

**Introduction**

Gregory Lynn Johnson ("Petitioner") was tried for the second-degree murder of Walter Howard, and a Caddo Parish jury returned a unanimous verdict of guilty. Petitioner received a mandatory life sentence. His conviction was affirmed on appeal. State v. Johnson, 244 So.3d 617 (La. App. 2d Cir. 2017), writ denied, 242 So.3d 1230 (La. 2018). Petitioner also pursued a post-conviction application in state court. He now seeks federal habeas corpus relief on six claims of ineffective assistance of counsel. For the reasons that follow, it is recommended that his petition be denied.

**Background Facts**

The evidence at trial showed that Johnny Howard, his girlfriend Katrina Sims, and his brother Walter lived at a residence on Central Street in Shreveport. Ms. Sims testified that she was a drug user and that Walter was a drug dealer. Sims was dropped off at the house between 2:00 and 3:00 a.m. on June 27, 2013. She walked up to the house, where she saw Petitioner on the front porch talking to Walter, who was standing inside the house between an opened wooden door and a locked screen door with burglar bars. Sims

recognized Petitioner because she had known him for about a year and had used drugs with him. Walter opened the screen door for Sims and locked it after she entered the house.

Sims testified that she soon heard the men arguing over a drug transaction. She saw Walter open the door, and Petitioner placed three packages of "rock" into Walter's hands. The men then started tussling, and Petitioner produced a silver pistol. Sims said that when Walter saw the gun, he pushed the wooden door shut. As Walter leaned against the door, Sims heard several gunshots and then Walter moaning. Sims called 911 and identified the shooter as "Greg." She picked Petitioner's photo out of a lineup and identified him in the courtroom as the shooter.

Johnny, Walter's brother, testified that he had been awakened by Petitioner knocking on his bedroom window and looking for Walter. Johnny had known Petitioner for several years. Johnny told Petitioner that Walter was asleep. Petitioner asked Johnny to wake Walter because he had "$50 for him." Johnny woke Walter and saw Walter walk to the front door. Johnny returned to bed, but he soon heard squabbling and then gunshots. He found Walter on the floor and heard him say, "He shot me." Johnny gave police a statement and identified Petitioner in a photo lineup as the last person he saw talking to Walter.

Justin Glover wrote a letter from jail to the DA and claimed knowledge of the shooting. He testified that he had visited with Petitioner prior to the shooting and had seen Petitioner walking in the direction of Walter's house. Glover said that he later learned from a police officer that law enforcement was looking for Petitioner because he had killed Walter. Glover testified that he met with Petitioner again. Petitioner was said to have been

accompanied by two young men, and they all had guns. Glover said that he told Petitioner that police were looking for him, and Petitioner gave his gun to one of the young men and asked him to put the guns in a ditch. Glover testified that Petitioner then told him that he thought he killed Walter.

A police officer testified that he was part of a team sent to apprehend Petitioner. They located him at an address provided by a confidential source. They obtained permission from an occupant to enter, and they found Petitioner hiding in a closet. He put up a brief struggle before he was arrested. Petitioner testified that he hid because he learned that week that a warrant had issued for his failure to register as a sex offender, and he did not want to go to jail for that offense.

The murder weapon was not found. Police did find six fired 9 mm shell casings and a bullet at the scene. They also recovered a bullet from Walter's body, which the coroner testified was the cause of death. A firearms expert testified that all of the casings were fired from one weapon, and the two bullets were fired from one weapon, but she could not say without testing the weapon whether both the bullets and casings came from the same gun.

Petitioner testified on his own behalf. He said that, on the morning of the shooting, he purchased $100 of drugs from Walter at the front door of his home. While there, he saw an unknown man and woman who arrived in a car. Petitioner said that as he walked down the street afterward, he heard gunshots and ran. He later saw the couple's car coming down the street. He testified that he knew Katrina Sims, but he claimed he did not see or speak to her on the morning of the shooting.

**Ineffective Assistance of Counsel**

### A. Introduction

Petitioner argues that his attorney rendered ineffective assistance of counsel in various ways. To prevail, Petitioner must establish both that (1) his counsel's performance fell below an objective standard of reasonableness and (2) had counsel performed reasonably, there is a reasonable probability that the result in his case would have been different. Strickland v. Washington, 104 S.Ct. 2052, 2064 (1984). "Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim." Id. at 2071.

### B. Habeas Burden

Petitioner's Strickland claims were adjudicated and denied on the merits by the state court, so 28 U.S.C. § 2254(d) directs that the question is not whether a federal court believes the state court's determination under the Strickland standard was incorrect but whether the determination was unreasonable, which is a substantially higher threshold. Schriro v. Landrigan, 127 S.Ct. 1933, 1939 (2007). The Strickland standard is a general standard, so a state court has even more latitude to reasonably determine that a defendant has not satisfied it. The federal court's review is thus "doubly deferential." Knowles v. Mirzayance, 129 S.Ct. 1411, 1420 (2009). For the federal court to grant relief, "[t]he state court decision must be so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Woods v. Etherton, 136 S. Ct. 1149, 1151 (2016) (per curiam) (quotation marks removed).

**Plea Bargain Advice**

Petitioner was charged with second degree murder, which is the killing of a human being when the offender "has a specific intent to kill or to inflict great bodily harm." A conviction mandates a sentence of life without parole. La. RS 14:30.1. Petitioner's first ineffective assistance of counsel claim asserts that trial counsel, Broocks Greer, gave him inadequate advice about a manslaughter plea offer. Petitioner claims that he would have elected to plead guilty to the charge of manslaughter (which may allow for parole eligibility) and an agreed 30-year sentence, but he did not because counsel told him that the prosecutor "could not establish specific intent or great bodily harm." Petitioner also faults counsel for not getting the plea offer in writing.

Nothing in the state record includes counsel's advice, but there is a great deal of information about Petitioner's ability to consider the plea offer and his views on the 30-year sentence for manslaughter given his age of 52. This exchange took place:

> THE COURT: All right. So we've had a conversation at the bench about the case. State has an offer out to the defendant.
>
> MR. STAMPS: Your Honor, let me just amend that to say subject to the approval of the family. Ms. Green has gone to try to speak to them.
>
> THE COURT: All right. So with that understanding, Mr. Johnson, there is a possibility of a plea in this matter. Now, that's totally up to you and it's basically between you, after discussion with your attorney, and with your family; however, you understand there's a serious risk in this particular case and we've talked about some of the evidence in this case. I can't say whether or not you would be convicted or not, but given the possibility of the penalty – if convicted of second-degree murder, the penalty is life imprisonment. There is no option. It's life. It's for the rest of your life.

Page 5 of 20

|  |  |
|---|---|
|  | Now, with the plea of manslaughter, possibly 30 years. There is a chance for parole, so that's not life imprisonment. About how old are you? |
| THE DEFENDANT: | I'm 52. |
| THE COURT: | All right. So there's the, you know, possibility of parole and I'm not sure when that parole will come up, but, you know, the chances – what I'm saying to you, on a manslaughter conviction, there is parole, on a second-degree murder conviction, there is no parole. It's life. That's where you will pass away. You understand that? |
| THE DEFENDANT: | Yes, sir, I understand, Your Honor. 30 years, at 52, with me being a third offender, I'm not eligible for no parole. That's going to be 28, 29 years flat if I don't get no good time. |
| THE COURT: | All right. So – |
| THE DEFENDANT: | That's 29, 28 years flat. I'd be 80-something years old. |
| THE COURT: | All right. I understand – I understand your position, but there is a possibility of parole or you doing your time; however, with a second-degree murder conviction and life imprisonment, there is no chance to get out is what I'm telling you. There is no chance to get out. That's where you will pass from Earth, imprisonment, so I just – |
| THE DEFENDANT: | I understand, Judge. |
| THE COURT: | Yeah. So I can't tell you what to do. You have to make that choice for yourself. All right. So I know that you want an opportunity to discuss that with your attorney, possibly with your family. You need the sheriff's department's permission to talk to your family on that, so they'll either okay it or deny it. I'm not really sure, but those are your options. Serge, can you approach? |

(Whereupon, bench conference held.)

| THE COURT: | All right. So you have permission from the sheriff's department to talk to your family. They can just stand up |
|---|---|

&gt; where they are. Come close to the bar, if you want, and they can talk to you about the situation. All right. So we'll just be in recess until 12:45. That's a 30-minute break.

After the break, the following took place:

THE COURT: I know you've had some discussion with your client. He's had discussion with his family. Where are we standing now?

THE DEFENDANT: We're going to trial, Your Honor.

THE COURT: All right. Okay.

Tr. 280-83.

Petitioner presented this claim in his post-conviction application. The trial court issued a written decision that found the application untimely but then went on to address the merits. The opinion set forth the Strickland standard, listed the six claims of ineffective assistance of counsel, and found that none of the allegations in the application were sufficient to prove that counsel failed to exercise reasonable professional judgment. The court also found that it was not necessary to hold an evidentiary hearing. Tr. 964-66.

The state appellate court considered a writ application and issued a decision that found (1) the application was timely and (2) that, on the showing made, Petitioner "fails to meet his burden of proving that he is entitled to relief" under Strickland and state post-conviction application rules. Tr. 1259. The Supreme Court of Louisiana denied a writ application and issued a per curiam that said Petitioner "fails to show that he received ineffective assistance of counsel under the standard of Strickland[.]". Tr. 1467-68.

A defendant is entitled to effective assistance of counsel during the plea bargaining process. "[A]s a general rule, defense counsel has the duty to communicate formal offers

Page 7 of 20

from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." Missouri v. Frye, 132 S.Ct. 1399, 1408 (2012). To prevail on a claim of ineffective assistance during the plea bargaining process, the petitioner must generally satisfy the two-part performance and prejudice test of Strickland v. Washington, 104 S.Ct. 2052 (1984).

Counsel may render deficient performance if he performs below an objective standard of reasonableness. That could include advising a client to reject a plea offer that should have been accepted, but a "fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 106 S.Ct. at 2065. To show prejudice in the context of plea advice, a petitioner "must show the outcome of the plea process would have been different with competent advice." Lafler v. Cooper, 132 S.Ct. 1376, 1384 (2012). The petitioner must show that, but for the ineffective advice of counsel, there is a reasonable probability that he would have accepted the plea offer and it would have been approved by the court. Id. at 1385.

This claim was adjudicated and denied on the merits by the state court, so 28 U.S.C. § 2254(d) directs that the question is not whether a federal court believes the state court's determination under the Strickland standard (as applied in Lafler) was incorrect but whether the determination was unreasonable, which is a substantially higher threshold. Schriro, 127 S.Ct. at 1939. As noted above, and as is applicable to all claims presented in this petition, the Strickland standard is a general standard, so a state court has even more

latitude to reasonably determine that a defendant has not satisfied it. The federal court's review is thus "doubly deferential." Knowles, 129 S.Ct. at 1420.

The state court did not hold an evidentiary hearing but "a full and fair hearing in state court is not a prerequisite to applying the AEDPA's deferential scheme." Wiley v. Epps, 625 F.3d 199, 207 (5th Cir. 2010). This court must assess the state court's rejection of the claim to determine whether it was an objectively unreasonable application of Strickland/Lafler, and this court's review "is limited to the record that was before the state court that adjudicated the claim on the merits." Cullen v. Pinholster, 131 S.Ct. 1388, 1398 (2011).

The record shows that the plea offer was communicated to Petitioner, and he was given reasonable time to discuss the offer with his attorney and family. Petitioner then announced, "We're going to trial, Your Honor." Petitioner spoke on the record about the lack of appeal of the manslaughter offer because of his age and likely ineligibility for parole as a third offender. There is nothing in the trial record, nor has Petitioner submitted any affidavit or other evidence, to suggest that counsel advised him not to take the plea offer. What is in the record suggests that Petitioner was inclined to reject it based on his age and criminal history, which made it appear worth the gamble of going to trial.

It is implausible that counsel would have suggested the prosecution could not prove specific intent or great bodily harm elements when the evidence showed that the killer fired six shots at close range. The issue at trial was the identity of the killer, not whether he had specific intent to kill or commit great bodily harm. Finally, Petitioner faults counsel for

Page 9 of 20

not getting the offer in writing, but he gives no reason that this was deficient performance or resulted in any prejudice.

To obtain relief, Petitioner must show that the state court's ruling "was so lacking in justification that there was in error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Anaya v. Lumpkin, 976 F.3d 545, 557 (5th Cir. 2020). The state court's adjudication of this claim was a quite reasonable application of Strickland to the facts presented, so habeas relief is not available.

**Conflict with Counsel**

Petitioner alleges that his counsel had a "conflict of interest" that hampered his advocacy. He then goes on to describe not so much as a true conflict but Petitioner's dissatisfaction with counsel's preparation and trial performance. He contends that he and counsel "were at serious odds" because of counsel's "indifference on how the case should be resolved." In particular, Petitioner complains that he provided counsel with the names and addresses of two witnesses, Issacray Taylor and Lamar Taylor, who could testify that they and Ann Bo went to Petitioner's home "that morning" and did not see Petitioner with a gun nor did they see Justin Glover at his home. Petitioner alleges that counsel spoke to both witnesses on the phone from CCC and told them that he would come by their home to talk, but counsel never visited or sent the defense's detective. Petitioner complains that counsel did not subpoena either witness for trial.

"Claims that counsel failed to call witnesses are not favored on federal habeas review because the presentation of witnesses is generally a matter of trial strategy and speculation about what witnesses would have said on the stand is too uncertain." Woodfox

v. Cain, 609 F.3d 774, 808 (5th Cir. 2010). A petitioner who makes such a claim must demonstrate prejudice by naming the witness, demonstrating that the witness was available to testify and would have done so, setting out the content of the proposed testimony, and showing that the testimony would have been favorable to a particular defense. Id., citing Day v. Quarterman, 566 F.3d 527, 538 (5th Cir. 2009). See also Evans v. Cockrell, 285 F.3d 370, 377 (5th Cir. 2000) (reversing grant of habeas relief for lack of such a showing).

Petitioner did not present the state court with any affidavits or other evidence to demonstrate that these witnesses would testify as he represents. Furthermore, testimony that the witnesses went to Petitioner's home at some time on the morning of the murder and did not see him with a gun would be of limited relevance to whether Petitioner was armed when he was at the victim's home at the time of the shooting. There was also an indication in the record that counsel attempted to locate at least one of the witnesses for trial. Counsel asked for a continuance at the start of the trial because he had been unable to serve or reach by phone a witness who would contradict Glover's testimony that he was at Petitioner's home and saw Petitioner headed toward the victim's home. Counsel stated that his detective had interviewed the witness, and counsel deemed him important; the prosecutor said the subpoena return indicated that the witness had moved. The trial judge denied the continuance. Before resting, counsel said that he would try to locate "Mr. Taylor" that night, but he rested the next day after apparently being unable to locate the witness. Tr. 274-80, 477, 482.

There is nothing in the state court record, to which this court's review is limited, that demonstrates the state court's adjudication of this post-conviction claim was an

objectively unreasonable application of Strickland to the evidence. The record reflects that counsel wanted to call a witness regarding who was present at Petitioner's home before the shooting, but he was thwarted by an inability of counsel or the sheriff to locate the witness. Accordingly, the state court's denial of this claim was quite reasonable under the circumstances.

Petitioner also complains that he "requested his counsel to file various pre-trial motions, interview specific witnesses who could have corroborated certain aspects of the defense theory of the charge, interview State's witnesses, and investigate relevant facts of the case." He represents that counsel visited him only five times at CCC and on the day of trial, and he says that counsel never provided him with copies of discovery documents or advised him of his trial strategy.

An attorney must engage in a reasonable amount of pretrial investigation and, at a minimum, interview potential witnesses and make an independent investigation of the facts and circumstances. Bryant v. Scott, 28 F.3d 1411, 1415 (5th Cir. 1994); Nealy v. Cabana, 764 F.2d 1173, 1177 (5th Cir. 1985). A court must presume that counsel's conduct falls within the wide range of reasonable professional assistance. Strickland, 104 S.Ct. at 2065. "To establish that an attorney was ineffective for failure to investigate, a petitioner must allege with specificity what the investigation would have revealed and how it would have changed the outcome of the trial." Miller v. Dretke, 420 F.3d 356, 361 (5th Cir. 2005).

Petitioner did not provide the state court with specific facts about what further investigation would have revealed and how it might have changed the outcome of the trial. The same is true with respect to his complaints of "various pre-trial motions" that counsel

should have filed. "[C]ounsel is not required to make futile motions or objections." Garcia v. Stephens, 793 F.3d 513, 525 (5th Cir. 2015), quoting Koch v. Puckett, 907 F.2d 524, 527 (5th Cir. 1990). Petitioner complains that counsel should have paid him more visits and engaged in better communication, but he does not explain how such additional effort is likely to have changed the verdict. The state court denied this claim on the merits, and the decision was not an objectively unreasonable application of Strickland based on the facts presented.

**No Expert Witnesses**

Petitioner argues that defense counsel was ineffective because he did not present evidence from a bullet/firearms expert or a DNA expert. He also offers that there "were any number of hypothetical experts—specialists in ballistics, fingerprints, psychiatry, psychology, physiology, or numerous other disciplines and subdisciplines—whose insight might possibly have been useful." The State presented a firearms expert who testified that the shell casings at the scene were fired from one gun, and the bullet at the scene and the bullet taken from the victim's body were fired by one gun. Petitioner makes only a conclusory assertion that had counsel requested a firearms expert there is a reasonable possibility of a different outcome.

With respect to a DNA expert, the State did not present any DNA evidence, and there is no indication that DNA was found on the spent cartridges or other item relevant to the investigation. Petitioner contends that counsel nonetheless should have retained a DNA expert who could somehow have shown the jury that it was physically impossible for

Petitioner to shoot and kill the victim without his DNA or fingerprints being on the casings found at the scene.

As noted above, claims that counsel failed to call witnesses are not favored on federal habeas review because the presentation of witnesses is generally a matter of trial strategy, and speculation about what a witness would have said is too uncertain. For this reason, the Fifth Circuit requires a petitioner making such a claim to demonstrate prejudice by naming the witness, demonstrating that the witness was available to testify and would have done so, setting out the content of the witness's proposed testimony, and showing that the testimony would have been favorable to a particular defense. Day, 566 F.3d at 538. "This requirement applies to both uncalled lay and expert witnesses." Woodfox, 609 F.3d at 808.

Petitioner offered the state court nothing more than speculation that unidentified expert witnesses might have offered testimony that could have helped the defense. He did not so much as identify an expert or suggest beyond conclusory assertions what the expert might have testified to, based on the available evidence, that would have helped. Given the entirely conclusory nature of these claims, the state court's adjudication of them does not provide a basis for habeas relief under the deferential standard of Section 2254(d).

**Impeachment of Justin Glover and Johnny Howard**

Petitioner complains that counsel did not adequately impeach Justin Glover based on the contents of a letter that Glover wrote the DA from jail. Glover implicated Petitioner in the letter that said three other people were in on the murder and, though Petitioner "had

Page 14 of 20

his hands in the killing," he was "not the one that done the shooting that killed the man." Glover later testified at trial that Petitioner told him that he thought he killed Walter.

Counsel cross-examined Glover and asked, "Do you recall in the letter saying that Gregory Johnson is not the one that did the shooting?" Glover admitted the prior statement, and counsel emphasized that he was looking at the letter in which Glover advised the DA that Petitioner was not the one who did that shooting and that Glover had information there were other people involved. Glover replied that those others had a reputation for doing things like that, but Petitioner never did. Counsel also cross-examined Glover about his delay in alerting police to his claims, other inconsistencies, and his criminal history.

Petitioner complains that counsel did not adequately impeach Johnny Howard about allegedly inconsistent statements such as whether Katrina Sims was present at the time of the shooting, whether Howard heard an argument, and precisely what Howard saw and heard that night. Part of Petitioner's argument is based on a police report in which an officer wrote that he spoke with Johnny Howard who stated that his brother was the victim inside the residence and, "J. Howard advised me that he did not see anything." Petitioner contends, based on that report, that any testimony Johnny gave was inconsistent.

Counsel cross-examined Johnny about what he saw and heard that night. Johnny testified that Petitioner had knocked on his window and asked for Walter. Johnny admitted that he woke Walter and then went back to bed, so he did not witness the actual shooting. He was able to testify, however, that it was Petitioner who had arrived at the home and asked for the victim immediately before the shooting. Counsel asked Johnny whether he told the defense investigator that he saw the shooting, but Johnny denied saying that.

Page 15 of 20

Counsel asked Johnny if he told an investigator that Katrina Sims was not there at the time of the shooting, and Johnny agreed to saying that to the investigator. Tr. 335-36. But Johnny clarified that several people were in the home that night, with visitors from Baton Rouge staying before proceeding to Kansas City for a reunion. Katrina Sims was among the people staying there, and he saw her in the house near the time of the shooting. Johnny said that he went back to bed after Walter went to the door, so he would have no way of knowing if Walter let Sims in after Johnny went to bed. Tr. 329-32.

Petitioner argues that defense counsel should have sought a limiting instruction that told the jury to disregard Glover's testimony based on inconsistencies. The judge did instruct the jury that it could disregard the entire testimony of a witness if the jury believed the witness testified falsely on any material fact. The jury was also told that a witness could be discredited by showing that he made a prior statement that was inconsistent with his trial testimony. Tr. 250.

The record shows that counsel reasonably cross-examined both Glover and Howard. He had Glover admit to the contents of his letter that suggested someone else was responsible for the actual killing, and he pointed out other weaknesses in Glover's testimony. He also questioned Johnny Howard about exactly what he saw or heard from his limited vantage point. In the end, however, the more important testimony was that of Katrina Sims. Neither Glover nor Howard claimed to have seen Petitioner actually engage in the shooting, but Sims immediately identified Petitioner as the killer and identified him in a lineup and at trial. The combination of counsel's impeachment efforts and Sims' testimony undermine any Strickland argument that more forceful or precise cross-

examination of Glover or Howard would have resulted in a different verdict. Given the record, the state court's denial of this post-conviction claim was not an objectively unreasonable application of Strickland. Much of Petitioner's argument on these claims consists of comparing his own testimony to that of the witnesses, but habeas review of the Strickland claim may not include a reweighing of the credibility of the trial evidence.

**Appellate Counsel; Incomplete Record**

Petitioner was represented by appointed counsel Carey Ellis on direct appeal. Appellate counsel's single issue on appeal was a challenge to the sufficiency of the evidence. Tr. 503-13. Petitioner filed a pro se brief that raised the same argument as well as alleged violations of his right against self-incrimination and the right to confront and cross-examine an adverse witness. He also alleged that the trial court erred by lodging an incomplete appellate record. Tr. 533-55.

Petitioner had noted during the appeal process that his counsel requested the entire transcript of the trial, but a transcript was not provided of voir dire, opening statements, closing arguments, and bench conferences. Petitioner moved to obtain the other transcripts, arguing that there were unspecified issues based on jury selection. His request was denied, and the state appellate court found that the record was adequate for appellate review. The appellate court noted that Petitioner did not identify any errors that occurred during voir dire or the other parts of the proceedings that were not transcribed. State v. Johnson, 244 So.3d at 629.

Petitioner complained in his post-conviction application that appellate counsel was ineffective because he filed a brief without having the entire transcript. The Supreme Court

has not required the State to provide a full transcript based on mere request. Draper v. State of Washington, 83 S.Ct. 774 (1963). Only those parts that are germane to consideration of an appeal must be provided. This means a defendant must allege a specific error that can be uncovered through production of portions of the voir dire transcript not included in the record. The State is not required to provide complete transcripts so that a defendant may conduct a fishing expedition to seek out possible errors for appeal. Hedgespeth v. Warden, Louisiana State Penitentiary, 2015 WL 1089325 (W.D. La. 2015). Habeas relief based on a claim of incomplete appellate record is not available absent a showing that a particular appellate issue could have been fleshed out from the transcript. Hedgespeth, citing Green v. Johnson, 160 F.3d 1029, 1045 (5th Cir. 1998).

    That said, Petitioner's claim is not that the court violated the constitution by not providing a complete record. His contention is that appellate counsel rendered ineffective assistance by not having a complete record before he filed his brief. Persons convicted of a crime are entitled to effective assistance of counsel on their first appeal of right. Evitts v. Lucey, 105 S.Ct. 830 (1985). Counsel's performance on appeal is judged under the Strickland test. On appeal, effective assistance of counsel does not mean counsel who will raise every non-frivolous ground of appeal available. It means counsel who will perform in a reasonably effective manner. Green, 160 F.3d at 1043 (citing Evitts). When a petitioner claims that counsel omitted an issue that should have been argued, the petitioner must show that had the issue been raised there was a reasonable probability that he would have won on appeal. Smith v. Robbins, 120 S.Ct. 746, 764 (2000); Moreno v. Dretke, 450 F.3d 158, 168 (5th Cir. 2006).

Petitioner raised the incomplete record issue on direct appeal, and he presented this Strickland claim in a post-conviction application. Throughout those proceedings, he has yet to articulate a single claim, meritorious or otherwise, that appellate counsel could have presented based on jury selection or other parts of the trial that were not transcribed. Given that shortcoming, it cannot be said that the state court's denial of this post-conviction claim was an objectively unreasonable application of Strickland or other federal law that was clearly established by the Supreme Court. Habeas relief on this final claim must be denied.

Accordingly,

It is recommended that Petitioner's petition for writ of habeas corpus be denied.

## Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

An appeal may not be taken to the court of appeals from a final order in a proceeding under 28 U.S.C. § 2254 unless a circuit justice, circuit judge, or district judge issues a certificate of appealability. 28 U.S.C. § 2253(c); F.R.A.P. 22(b). Rule 11 of the Rules Governing Section 2254 Proceedings for the U.S. District Courts requires the district court to issue or deny a certificate of appealability when it enters a final order adverse to the applicant. A certificate may issue only if the applicant has made a substantial showing of the denial of a constitutional right. Section 2253(c)(2). A party may, within fourteen (14) days from the date of this Report and Recommendation, file a memorandum that sets forth arguments on whether a certificate of appealability should issue.

THUS DONE AND SIGNED in Shreveport, Louisiana, this 15th day of March, 2023.

Mark L. Hornsby
U.S. Magistrate Judge